**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 19-80030-CR-DIMITROULEAS**

**UNITED STATES OF AMERICA,**

vs.

**PHILLIP BRAUN,**
**AARON SINGERMAN,**
**ANTHONY VENTRELLA,**
**JAMES BOCCUZZI,**
**BLACKSTONE LABS, LLC, and**
**VENTECH LABS, LLC.,**
      **Defendants.**
_____/

**JOINT DEFENSE REPLY TO GOVERNMENT'S RESPONSE TO MOTION IN LIMINE TO EXCLUDE CERTAIN WITNESSES FROM TESTIFYING AT TRIAL AND MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT, WITH INCORPORATED MEMORANDUM OF LAW**

In its Response (DE 453), the Government confirmed that it intends to offer evidence at trial of an undetermined number of witnesses "who purchased and consumed products distributed by defendant Blackstone Labs, LLC ("Blackstone")." These witnesses are in addition to C.H., the only named victim in the Indictment. As is explained below, the Response does not diminish the strength of the fundamental points made in the Motion in Limine (DE 441). Rather, the Government has provided notice of an intention to call irrelevant and prejudicial witnesses. These witnesses will be used to improperly bolster C.H.'s claims of injury and will necessitate time-consuming mini-trials on their consumption of other supplements and substances, as well as extensive examination of their medical histories. The Motion in Limine (DE 441) should therefore be granted in full.

    **A.**    **Complaints That Do Not Constitute "Serious Adverse Events" Are**

1

**Irrelevant.**

The Government describes the witness testimony as follows:

These witnesses each subsequently contacted Blackstone with concerns that the products caused health problems. Each witness would testify about their individual experience, the representations they relied upon in purchasing the defendants' products, the reason they subsequently contacted Blackstone, and the response they received from Blackstone, if any." See, page 2, (DE 453).

As detailed in the Motion in Limine, these prospective witnesses complained of various and often minor physical ailments. Blackstone was not legally required to report these complaints to FDA.

The Government confuses witness complaints that are not legally required to be reported with "serious adverse events" that are required to be reported as defined under the Dietary Supplement and Nonprescription Protection Act of 2006 ("DSNPA"). The Government argues that the *failure to report any complaint* from any purchaser is relevant evidence of wire fraud or mail fraud or intent to deceive or impede the function of the FDA. The Government even creates its own category of required reporting like "**potentially** serious adverse" events, a phrase that is nowhere found in the statute. Response at page 18, line 8. The Government argues that the Defendants never reported anything, "serious or otherwise," and that fact is relevant criminal evidence for which the Defendants must be held accountable in this trial. This is wrong, and represents a significant expansion of the limited regulatory scheme in the guise of a criminal prosecution. The failure to do something not required by law cannot be used by the Government to imply "otherwise." The Government expression as to the ambit of the statutory reporting obligation. How much more so will the jury be irreparably confused by this uncertainty? The statutory authority governing mandatory reporting is not even mentioned in the Indictment. This

Court has the authority to exclude such evidence.

The Motion in Limine is factually specific. The Motion sets forth the information the customer provided to Blackstone about any alleged side effect. The Motion differentiates the information later obtained by the government during its investigation. Unlike the Motion, the Government's Response does not make its relevance arguments witness by witness. The Government does not even limit itself to the witnesses identified in the Motion as more fully detailed below.

The Government alternates between the phrases "adverse event" and "serious adverse event." The distinction between these terms is, however, critical. As the Government acknowledges (p. 9), the *Defendants are only required to report "serious adverse events"* to FDA. Moreover, the Government concedes on page 13 that only one complaining customer other than C.H., that is R.R., was hospitalized. None of the other complaining customers meet the statutory definition of "serious adverse event." For example, regarding M.G., whose alleged injury is gynecomastia or enlarged breast tissue, the Defendants set forth in the Motion in Limine the following:

> *M.G*. **This member of the military sent an email to Blackstone reporting that he ordered the "stack 3 times about 3-4 months. The stack did work for me." He told Blackstone he experienced gynecomastia (swollen breasts) with discharge. He sent his blood work to the Blackstone customer service email and was told by a Customer Representative to see a doctor.** The Government provided no medical records or records of hospitalization for this witness.

> "Serious adverse event" is defined in 21 U.S.C. 379aa-1(a)(2) as
>
> one that results in death, a life-threating experience, inpatient hospitalization, a persistent or significant disability or incapacity, a congenital anomaly or birth defect, or requires based on reasonable medical judgment, a medical or surgical intervention to prevent an outcome described above.

3

As applied to M.G., the Government offered no basis for stating that the changes were "permanent" and that enlarged breast tissue meets the definition of serious adverse event. It is not a disability or incapacity and is nowhere alleged in the Indictment. Likewise, S.L.'s endoscopy, or other witnesses' lightheadedness, jumpiness, or swollen gums are not serious adverse events and therefore, those complaining witnesses are irrelevant and must be excluded.

**B.     Alternatively, Medical Records Are Necessary.**

The Government declared it "does not believe that [the complaining customers'] medical records are necessary or relevant to the trial, other than C.H." Defendants do not share that belief. Nor do due process considerations support the Government's contention. Defendants have a constitutional right to be informed of the allegations against them, to confront adverse witnesses, to explore the substance of their testimony, and to test their credibility through cross-examination. If the Government is permitted to call S.L., as just one example, to testify that she "required an emergency room visit and an endoscopy after consuming a Blackstone product" (p. 18), Defendants have a right to review S.L.'s complete medical records and inquire about the nature and extent of S.L.'s use and abuse of Blackstone products, her use and abuse of other products and substances, the medical care she obtained, and whether the Blackstone product had any causal connection whatsoever to the Emergency Room visit. To be clear, these are the exact complaining customer "mini-trials" the Defendants seek to avoid through their Motion in Limine.

But, if this Court allows the Government to call a witness for this purpose, the Court must equally allow the defense to investigate and effectively cross-examine that witness. The Defendants must be allowed to show that a Blackstone product was not the cause of the alleged

4

injury. To not allow investigation and effective cross-examination will enable the jury to conclude CH's injury must have been caused by a Blackstone product. If the Defendants are prohibited from cross-examining the other witnesses as to their extensive medical histories, as yet unknown and undisclosed, the jury will speculate why the Defendants remained silent, ultimately drawing an unfair and inaccurate inference of guilt.

The Government states on page 4 that it provided some medical records at the same time they argue that medical records of these complaining customers are irrelevant. However, just as soon as a witness gives testimony about an injury, the Defendants must cross-examine the witness to determine whether that injury meets the statutory definition of a "serious adverse event" requiring reporting by Blackstone on MedWatch. This determination requires medical records from at least 6 months before the alleged injury to 6 months after the alleged injury.

With respect to R.R., he wrote an email to Blackstone that he experienced acute liver failure from DMZ 2.0. However, he is the customer most like C.H., who claimed he took Alpha One Max, in that R.R. *later* told the Government he suffered liver injury and was hospitalized because of taking Blackstone's DMZ 2.0 and Alpha One Max. He also informed the Government that an employee at *Gold Coast Fitness in Brunswick, Georgia* (not Blackstone or any of the charged Defendants) told him to take the products together. His prospective testimony is the most dangerous because the jury could readily infer that if R.R. suffered the same injury from the same product, then C.H. must be telling the truth. It is critical that complete medical records be provided for R.R. The Government will pre-try this witnesses in anticipation of trial. The Government can have R.R. sign the same HIPPA medical consent form C.H. signed for access to his voluminous medical records. The Government can produce all medical records for all the

doctors or institutions for which R.R. sought consultation and treatment for at least 6 months prior to his alleged injury and for 6 months after his alleged injury. In preparing for cross-examination of R.R., the Defendants must have the opportunity for their medical expert to evaluate R.R. and his claim that a Blackstone product caused his injury.

Medical records are crucial for impeachment to call into question the witness's entire credibility. Also, medical records are crucial to avoid the jury concluding that if this witness possibly suffered a medical injury, then CH must have suffered one as well because of a Blackstone product. The Government states as much on page 12,

> Here, where medical and pharmacology experts are expected to testify about the specific effects of anabolic steroids on the human body, evidence that Blackstone products in fact caused identical effects in multiple individuals is relevant to prove the Count 4 Conspiracy. A juror could properly conclude that a product included anabolic steroids where multiple individuals consumed the product and experienced symptoms or results consistent with anabolic steroids."

Liver injury can be caused by alcohol abuse, Tylenol and NSAIDS. A Blackstone product may **not** have been the cause of the complaining witnesses' injury; but that cannot be shown without complete medical records.

### C. The Government's New Justifications Do Not Make the Testimony Admissible.

After repeatedly portraying the complaining customers as relevant because they reported health problems that Blackstone dismissed, ignored, or covered up, the Government shifts gears, recasting these customers as *reliance witnesses* who can describe the product labeling, website content, and other representations they received before purchasing the Blackstone products. The Government argues on page 10-11 that these same witnesses are directly relevant to the scheme to defraud consumers and the FDA. The Government states on page 11:

6

> A consumer who purchased Blackstone products is **ideally situated** (emphasis added) to provide evidence…. [T]he witness would testify that they purchased a Blackstone product because it was labeled as a dietary supplement. The witness could testify about the representations they relied upon in purchasing and consuming the product, whether from the label, Blackstone's website, or other sources related to the Defendants.  Similarly, the witness could testify whether omitted facts would have influenced their decision to purchase the product, such as a failure to inform them that the products were manufactured without current good manufacturing practices, or a failure to inform them that the steroid products were unapproved new drugs that the FDA had previously advised were unsafe and unapproved or even anabolic steroids that were unlawful to distribute."

All that decision making would have occurred prior to the injury. If that is the theory of relevance for calling these witnesses, then enlarged breast tissue is irrelevant. For sure, Grandmother C.D. must be excluded. She cannot testify to any of the above because her grandson purchased his product on Ebay, according to the Government. Below is the information provided in the Motion in Limine,

> *C.D.*. The Government provided their records about this grandmother who told them her minor grandson obtained a Blackstone product.  Pretrial investigation by the FDA concluded he likely purchased the product on eBay.  Grandmother C.D. described her grandson's adverse effects as "jumpy, nervous and edgy."  She told the Government that she called Blackstone to complain about the product.  The Defendants have been unable to find any Blackstone records of her alleged call. The grandson did not go to the doctor and there is no information indicating medical treatment.  No medical records were provided in discovery.

But reliance on Blackstone's labels, website, or omissions is not the real reason the Government is calling these complaining witnesses. They are calling these complaining witnesses to prop up C.H. As soon as the witness testifies about any alleged injury, the medical records become relevant.

### D. The Government is intentionally vague about which customers it intends to call.

The Government has not filed a Federal Rule of Evidence 404(b) Notice. In its Response,

the Government is not specific about which, or even how many, complaining customers it intends to call at trial. Indeed, in n. 2 (p. 4), the Government purports to reserve to itself the right to call additional, unidentified, and undisclosed customers at any point in the trial. The Government states that on March 28, 2019, the Government filed a Motion in Support of Authorization to Use Alternative Victim Notification Procedures (DE 66). This is part of the Government's statutory obligations under the Crime Victims' Rights Act of 2004. The Court granted the motion allowing the use of a website for nationwide victim notification. Establishing a "public website for victim notification" (p. 4, n. 2) is hardly notice of an intent to call any witnesses.

A passing mention (p.5) to "several consumer-victims" in a submission (DE 94) filed on April 16, 2019, the Unopposed Motion to Designate Case as Complex, Continue the Trial Date, Continue Pretrial Deadlines, and Exclude Time Under the Speedy Trial Act is not adequate notice. An electronic folder titled "Victim Records" containing records for several individuals (p. 5) does not purport to identify these persons as trial witnesses or to supply the defense with the comprehensive medical records pertaining to them.

The Government has produced a massive haystack, now taking the position that it is the defense obligation to have found the needle(s). Arguing that Defendants had "notice" based on a "No Contact Witness List" it produced in March of 2019, at the time of the arrests is unavailing and misleading.

Lastly, the Government argues on page 12 that, "For each potential witness, Blackstone continued to sell the offending product after the victim witness contacted Blackstone." This novel proposition -- that continuing to operate a business after receiving the first customer

complaint is proof of a criminal conspiracy -- is not supported with a citation to any legal authority.

If the Government gets to cherry pick its "handful" or an unlimited number of Blackstone customers from its public website to describe negative experiences in the prosecution of a criminal case, then Defendants have the right to call at least a sampling of the many, many customers who successfully used Blackstone products, followed all the directions, maintained their health and wellness, suffered no adverse events, and offered consistent praise for the company. *See*, *e.g*., *United States v. Diallo*, 40 F.3d 32, 35 (2d Cir. 1994) (defense witness should have been allowed to testify, because "[t]urnabout is fair play, even in federal court"). This will substantially lengthen the trial through the addition of still more "mini-trials. And this is precisely what the Motion in Limine is designed to prevent.

### E. Conclusion.

For all the reasons set forth in the Motion in Limine, these complaining customers should be excluded because they (1) would significantly alter the allegations in the Indictment by presenting testimony that various nutraceutical supplements caused adverse health and wellness effects, (2) would significantly lengthen the trial with wholly irrelevant matters, (3) will prejudice the jury against the Defendants by playing on the sympathy and emotion of the jury, (4) will impermissibly infer bad character, (5) will unfairly and prejudicially confuse the jury about the relevant issues in the case, (6) will tend to bolster the dubious claim that C.H. suffered serious bodily injury as a result of using Blackstone's product, and (7) at least with respect to two of the customers, require the disclosure of new medical records and add additional medical expert witness expense. Accordingly, the witnesses who should be excluded include K.S.,  T.L.,

J.C., K.K., M.G., D.G., G.S., J.Z., C.D., R.R., S.L., S.N., and any other similarly situated individuals. The portions of the Indictment identified as surplusage relating to these witnesses should be stricken.

DATED: September 7, 2021.

                                              Respectfully submitted,

NANCY VORPE QUINLAN
Of Counsel
PERLET & SHINER, P.A.
Counsel For Anthony Ventrella
Northbridge Centre
515 North Flagler Drive, Suite 701
West Palm Beach, Florida 33401
(561) 721-0552 telephone
(561) 721-3049 facsimile
By: *s/Nancy Vorpe Quinlan*
Nancy Vorpe Quinlan, Esq.
Florida Bar No. 0593532
Nquinlan@palmbeachdefense.com

RICHARD G. LUBIN, P.A.
707 North Flagler Drive
West Palm Beach, FL 33401
Telephone: 561-655-2040
Facsimile: 561-655-2182
Email: rich@lubinlaw.com
Counsel for Aaron Singerman
By: */s/ Richard G. Lubin*
RICHARD G. LUBIN
Fla. Bar No. 182249

*/s/ Amy Morse*
AMY MORSE, ESQ.
Morse & Morse, LLC
Of Counsel to Richard G. Lubin, P.A.
707 North Flagler Drive
West Palm Beach, FL 33401
T: (561) 651-4145;
F: (561) 655-2182

Email: amy@morselegal.com
FL Bar No.: 0388475
Counsel for Aaron Singerman

*s/Benedict P. Kuehne*
BENEDICT P. KUEHNE
Florida Bar No. 233293
KUEHNE DAVIS LAW, P.A.
100 S.E. 2nd St., Suite 3105
Miami, FL 33131-2154
Tel: 305-789-5989
Fax: 305-789-5987
ben.kuehne@kuehnelaw.com
efiling@kuehnelaw.com
Counsel for Phillip Braun

*s/Michael T. Davis*
MICHAEL T. DAVIS
Florida Bar No.: 63374
KUEHNE DAVIS LAW, P.A.
100 S.E. 2nd St., Suite 3105
Miami, FL 33131-2154
Tel: 305-789-5989
Fax: 305-789-5987
mdavis@kuehnelaw.com
efiling@kuehnelaw.com
Counsel for Blackstone Labs, LLC

*s/Susan Dmitrovsky*
SUSAN DMITROVSKY
Florida Bar No. 73296
KUEHNE DAVIS LAW, P.A.
100 S.E. 2nd St., Suite 3105
Miami, FL 33131-2154
Tel: 305-789-5989
Fax: 305-789-5987
susand@kuehnelaw.com
Counsel for Blackstone Labs, LL

*/s/ J. Stephen Salter*
J. STEPHEN SALTER
8975 Pompano Way
Gulf Shores, Al 36542
T: (205) 585-1776

umstakwit@aol.com
Counsel for James Boccuzzi


*/s/ Robert J. Shearin*
ROBERT J. SHEARIN
1700 South Federal Highway, Suite 501
Boca Raton, Fl 33432
T: (561) 706-7572
F: (561) 429-2987
R1shearin1@yahoo.com
Bar No.: 47759
Counsel for Ventech Labs, LLC

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 7, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*s/Nancy Vorpe Quinlan, Esquire*
Counsel for Anthony Ventrella