UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-80030-CR-DIMITROULEAS/MATTHEWMAN

UNITED STATES OF AMERICA,
            Plaintiff,
v.

PHILLIP BRAUN,
AARON SINGERMAN,
ANTHONY VENTRELLA,
JAMES BOCCUZZI,
BLACKSTONE LABS, LLC, and
VENTECH LABS, LLC.

            Defendants.
_____/

## DEFENDANTS' MOTION FOR CLARIFICATION AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendants, Phillip Braun, Aaron Singerman, Anthony Ventrella, James Boccuzzi, Blackstone Labs, LLC., and Ventech Labs, LLC., respectfully submit this Motion and Memorandum of Law in support of their motion requesting the Court for clarification of its position regarding the points outlined below.

It appears as though the Government and the Court have arrived at conflicting conclusions regarding a central issue in this case: namely, whether it should be the jury or the Court that decides whether a charged, unlisted substance is or is not covered under the Designer Anabolic Steroid Control Act ("DASCA"). The Government has stated its position: "Whether or not the unlisted anabolic substances alleged in the indictment are anabolic steroids as defined in the [Controlled Substances Act] CSA and section 802(41) is a *question of fact for the jury*." (Gov't Rep. DE-258, Page 9) (emphasis added). The Court has stated: "Whether a substance is a controlled substance is a *question of law for the Court* to decide." (Ord., DE-336, Pg.1 ¶2) (emphasis added). The uncertainty of DASCA as to this critical issue is symptomatic of the statute's ambiguity as to

1

whether dimethazine, methylstenbolone, and methyl-1-etiocholoenolol[1] (the "Unlisted Substances") are controlled substances. Defendant Singerman is entitled to know with certainty, before he prepares to present his defense, whether this critical issue will be decided by Your Honor or by a jury. He must know whether it is a pure question of law, a question of fact, or a mixed question of law and fact.

## Background

On or about March 7, 2019, a Grand Jury in the Southern District of Florida returned a 14-count indictment against the captioned defendants, including Defendant Singerman (the "Indictment"). Defendants are charged in various of the counts in the Indictment. Count One charges Defendant Singerman with conspiracy in violation of Title 18, United States Code, Section 371. Counts Two and Three charge Defendant Singerman with introduction of new drugs into interstate commerce in violation of Title 21, United States Code, Section 331(d), 355(a) and 333(a)(2). Count Four charges Defendant Singerman with conspiracy to distribute controlled substances in violation of Title 21, United States Code, Section 846. Count Five charges Defendant Singerman with distribution of a controlled substance in violation of Title 21, United States Code, Section 841(a)(1). Counts Nine, Ten, and Eleven charge Defendant Singerman with money laundering in violation of Title 18, United States Code, Section 1957(a). Trial is currently scheduled for October 12, 2021.

## Relevant Facts

On January 30, 2020, Defendants filed their Redacted First Motion to Dismiss Counts 1,4-8 [DE-247] (the "Motion"). The Government filed a Response [DE-258] on February 10, 2020, followed by Defendants' February 25, 2020 Reply [DE-297]. Oral Arguments were heard on

---

[1] Used herein as shorthand for the full name "methyl-1 etiocholenolol epitiochololane."

March 2, 2020. On March 17, 2020, this Court issued the Order [DE-336] denying Defendants' Redacted First Motion to Dismiss Counts 1,4-8[2].

The Order denied the Motion., in doing so however, the Court stated in part:

2. Whether a substance is a controlled substance is a question of law for the Court to decide. *U.S. v. Phifer*, 909 F. 3d 372, 385 (11th Cir. 2018) citing, *McDermott Int'l v. Wilander*, 498 U.S. 337, 356 (1991). It is a fact question for the jury to determine whether the defendant knew the substance was a controlled substance under federal law. *McFadden v. U.S.*, 135 S. Ct. 2298(2015). (DE-336 Pg.1 ¶ 2.)

## Memorandum of Law

1. *United States v. Phifer*

*Phifer* was convicted of possession with intent to distribute ethylone, a controlled substance analogue . See *United States v. Phifer*, 909 F.3d 372, 375 (11th Cir. 2018). Butylone, "along with 'it's optical, positional, and geometric isomers'", is a schedule I substance. *Id.* at 376. *Phifer* argued that the definition of "positional isomer," as defined in 21 C.F.R. §1300.01(b), should not govern the use of the term in §1308.11(h) and further stated that the definition used by the DEA in §1200.01(b) differed from the accepted "literal definition". *Id.* at 379. Despite expert testimony affirming the defendant's position regarding the two conflicting definitions, the jury instructions only included the DEA's definition of "positional isomer." *Id.* at 381.

Although both the defendant and the government argued that the regulatory definition was unambiguous, each claimed it meant opposite things. *Id.* at 382. The 11th Circuit determined that the definition was ambiguous. *Id*. "The regulatory agency has the responsibility to state with ascertainable certainty what is meant by the standards it has promulgated." *Id.* at 384 (citing *Diamond Roofing Co., Inc, v. Occupational Safety & Health Review Commission*, 528 F.2d 645,

---

[2] Defendants subsequently filed a March 27, 2020 Motion for Reconsideration [DE-364], and on April 6, 2020 the Government filed a Response [DE-370], to which, on April 13, 2020, the Defendants filed a Reply [DE-376]. As the Motion for Reconsideration was denied, the Order in effect is that of March 17, 2020 [DE-336].

3

649 (5th Cir. 1976)). It is a question of law for the court to decide, after an evidentiary hearing, what definition or definitions are "generally accepted within the scientific community." *Id.* at 386. See *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 331, 356 (1991) (Cited by this Court Ord. DE-336). "[T]hen, during the criminal trial, in the jury instructions, the district court must define "positional isomer" in *all* ways that it has found are generally accepted within the scientific community. It is for the jury to decide whether, as a *matter of fact*, ethylone satisfies all of the generally accepted definitions of a "positional isomer" of butylone." *Phifer*, 909 F.3d at 386. (emphasis added). In *Phifer*, the court further held that in order for the jury to return a guilty verdict, it must find that the substance at issue qualifies as a "positional isomer" under *all* definitions provided. *Id.* (emphasis added). *Phifer's* conviction was reversed and remanded. *Id.*

   2. *McFadden v. United States*

In *McFadden*, the defendant was arrested for selling "bath salts", a substance that had an effect similar to cocaine and methamphetamine. *McFadden v. United States*, 135 S. Ct. 2298 (2015). The defendant sought to avoid the Analogue Act by selling the "bath salts" with warnings stating, "not for human consumption." *Id.* at 2302. The sides submitted different versions of jury instructions pertaining to the defendant's "knowledge". *Id.* at 2303. The court combined the two definitions of knowledge in an attempt to compromise between the two positions. *Id.* McFadden was convicted by the jury, that decision was then affirmed by the court of appeals. *Id.*

McFadden argued that the jury instruction did not fully convey the mental state required by the Analogue Act. *Id.* at 2307. A defendant's knowledge of a substance's status can be established in two ways: (1) knowing he possessed a controlled substance listed on the federal schedule, even if he did not know the identity of the substance; or (2) knowing the specific identity of the substance at issue even if he did not know its legal status. *Id.* at 2305. The case was remanded

4

to the appeals court to determine if the omission of an element from the jury instruction was harmless error. *Id.* at 2307. The case law here is clear that under the Analogue Act, both the questions of substantial similarity for both structure and effect, and the *mens rea* of a defendant, are questions of fact for the jury.

## Argument

In its Order in the instant case, the Court ruled that "whether a substance is a controlled substance is a question of law for the court to decide." (Ord. DE-336 ¶2). However, as discussed above, the *sine qua non* of analogues is the fact that they are legal until the government proves to a jury that they are not, making this an issue of fact, not law. As this Court has previously held that DASCA functions as an analogue act, the same standards for prosecution must follow. A jury should determine each fact in this prosecution: finding whether the Unlisted Substances are "designer steroid" iterations of the listed substances, and whether *mens rea* exists.

To be a Controlled Substance Analogue, a jury must determine that the unlisted substance bears substantial similarity to a listed Schedule I or II substance. Only after a jury makes this determination, will the given substance be considered an analogue. If a jury determines this fact, the government must additionally prove *mens rea* to find a specific defendant guilty under the Analogue Act. Each defendant and each substance require these same determinations, and the factual findings in a given prosecution hold no bearing on subsequent trials, where they must be proven anew.

**I.     Whether an unlisted substance is a controlled substance analogue is a question of fact for the Jury.**

The jury must decide, as factfinder, whether the Unlisted Substances in this case are controlled under DASCA. Each Analogue Act case cited by this Court in the Order (*Phifer*, *McFadden*, *Carlson*, and *Fisher*) for which clarification is requested, relied upon a jury as the

5

finder of fact to determine the substantial similarity prong. While, under *McDermott* (also cited by the Court), it is a matter of law for the Court to determine the statutory standard to be applied, it is for the jury to decide if the facts meet that standard. *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 339-40 (1991). If this Court is proceeding as though DASCA is some species of analogue act[3], it logically follows that the jury must be the finder of fact for each prong. This is not a matter of law under the Analogue Act, and therefore cannot be a matter of law under DASCA.

It is on this point that, Defendant Singerman respectfully asks the Court to clarify its position on the matter.

**II.     The determination of the defendant's knowledge of controlled substances is only necessary after it has been determined, as a matter of fact, that the substances are an analogue.**

Under the Analogue Act, a controlled substance analogue is not listed, but rather deemed a controlled substance by its analogous features. A jury must find as a matter of fact that a given substance has a chemical structure substantially similar to the chemical structure of a controlled substance in schedule I or II, has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the effect of a controlled substance in schedule I or II, or is represented/intended to have that effect with respect to a particular person. 21 U.S.C. § 802(32)(A); 21 U.S.C. §813. In addition, under the *mens rea* standard articulated in *McFadden*, a defendant who possesses a substance found by a jury to meet the definition of a controlled substance analogue, must also possess knowledge of those features and must know all the facts that make her conduct illegal. Again, a question of fact for the jury.

Defendant Singerman agrees with the Government and the Court's official position that whether the defendant knew the substance was a controlled substance is a question of fact for the

---

[3] Defendant Singerman maintains his position that DASCA is not an analogue act as argued in Defendants' Redacted First Motion to Dismiss Counts 1, 4-8 and that the Unlisted Substances are not controlled substances.

jury. *McFadden* further holds that the jury only looks to the knowledge of the defendant *after* the jury has determined that the controlled substance in question is in fact an analogue. Therefore, whether or not a substance is actually controlled based on substantial similarity becomes even more crucial to Defendant Singerman's trial preparation. This consequence flows from the structure of the Analogue Act itself, which lists rather than defines, substances that may be found to be controlled.

As the substances involved in the Blackstone Labs prosecution are neither listed nor well-known, Chief Justice Roberts' *McFadden* concurrence punctuates the need for the jury as fact finder:

> In cases involving well-known drugs such as heroin, a defendant's knowledge of the identity of the substance can be compelling evidence that he knows the substance is controlled. But that is not necessarily true for lesser known drugs. The Court says that knowledge of the substance's identity suffices because "ignorance of the law is typically no defense to criminal prosecution." I agree that is "typically" true. But when "there is a legal element in the definition of the offense," a person's lack of knowledge regarding that legal element can be a defense. And here, there is arguably a legal element in Section 841(a)(1)—that the substance be "controlled."

*McFadden*, 135 S. Ct. at 198-99. Here, as Chief Justice Roberts distinguishes, there is a legal element in the definition of The Analogue Act. Defendant Singerman should be afforded the opportunity to have a jury of his peers decide whether the substances at issue under DASCA—are "controlled."

Pursuant to the Southern District's local rules, Richard G. Lubin, Esq., counsel for Defendant Aaron Singerman conferred with Government Counsel, Alistair Reader in an effort to resolve the issues raised in the Motion. Counsel for the Government did not agree and the Government will be filing a response to this Motion.

## **REQUEST FOR ZOOM HEARING**

Pursuant to Local Rule 88.9 undersigned counsel respectfully requests that this Motion be scheduled for a hearing via Zoom due to the ongoing COVID-19 pandemic.

WHEREFORE, Defendants respectfully asks this Court to clarify its position on whether it is a matter of fact or a matter of law, or a mixed question of fact and law, as to whether a substance is controlled.

**DATED** this 9th day of September, 2021.

Respectfully submitted,

**RICHARD G. LUBIN, P.A**.
707 North Flagler Drive
West Palm Beach, FL  33401
Telephone:  561-655-2040
Facsimile:   561-655-2182
Email: rich@lubinlaw.com
Counsel for Aaron Singerman

By:   */s/ Richard G. Lubin*
**RICHARD G. LUBIN**
Fla. Bar No. 182249

*/s/ Amy Morse*
**AMY MORSE, ESQ**.
Morse & Morse, LLC
Of Counsel to Richard G. Lubin, P.A.
707 North Flagler Drive
West Palm Beach, FL 33401
T: (561) 651-4145;
F: (561) 655-2182
Email: amy@morselegal.com
FL Bar No.: 0388475
Co-Counsel for Aaron Singerman

/*s/Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2nd St., Suite 3550

Miami, FL 33131-2154
Tel: 305-789-5989
Fax: 305-789-5987
ben.kuehne@kuehnelaw.com
efiling@kuehnelaw.com
Counsel for Defendant Braun

*s/Michael T. Davis*
**MICHAEL T. DAVIS**
Florida Bar No.: 63374

*s/Susan Dmitrovsky*
**SUSAN DMITROVSKY**
Florida Bar No. 73296

**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2nd St., Suite 3550
Miami, FL 33131-2154
Tel: 305-789-5989
Fax: 305-789-5987
mdavis@kuehnelaw.com
efiling@kuehnelaw.com
Counsel for Defendant Blackstone Labs, Inc.


*/s/ Nancy Vorpe Quinlan*
**NANCY VORPE QUINLAN**
515 North Flagler Drive, Suite 701
West Palm Beach, FL 33401
Tel: 561-721-0552
Email: nquinlan@palmbeachdefense.com
Florida Bar No. 593532
Counsel for Defendant Ventrella


*/s/ Robert Shearin*
**ROBERT SHEARIN**
1700 S. Dixie Hwy., Suite 501
Boca Raton, FL 33432
Tel: 561-706-7572
Fax: 561-429-2987
Email: rlshearin1@yahoo.com
Florida Bar No.: 47759
Counsel for Defendant Ventech Labs, LLC

9

/*s/ J. Stephen Salter*
**J. STEPHEN SALTER**
8975 Pompano Way
Gulf Shores, Alabama 36542
Phone: 205-585-1776
Email: umstakwit@aol.com
Admitted Pro Hac Vice for Defendant Boccuzzi

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 9, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  */s/ Richard G. Lubin*
**RICHARD G. LUBIN**